UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WHEELER,<br><br>              Plaintiff,<br><br>       v.<br><br>K. ALICESON, et al.,<br><br>              Defendants. | CASE NO. 1:12-cv-00860-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**<br><br>**(ECF No. 87)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

I.      **PROCEDURAL HISTORY**

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 28 U.S.C. § 1983. (ECF Nos. 1 & 5.) The action proceeds against Defendants Garcia, Goss, Trevino, Isira, and Coffin on Plaintiff's First Amendment retaliation claim, and against Defendant Isira on Plaintiff's Eighth Amendment medical indifference and state law negligence claims.

        Before the Court is Plaintiff's June 24, 2015 motion for leave to file an amended complaint (ECF No. 87), as well as his proposed third amended complaint (ECF No. 88). Defendants filed an opposition. (ECF No. 93), and Plaintiff filed a rely (ECF No. 94). The matter is deemed submitted.

1  ## II.   LEGAL STANDARD

2      The decision to grant or deny leave to amend pleadings is within the trial court's

3  discretion. <u>Swanson v. U.S. Forest Serv.</u>, 87 F.3d 339, 343 (9th Cir. 1996); <u>United States</u>

4  <u>v. Cnty. of San Diego</u>, 53 F.3d 965, 969 n.6 (9th Cir. 1995).

5      A party seeking leave to amend pleadings must demonstrate that amendment is

6  proper under Federal Rule of Civil Procedure 15. <u>Johnson v. Mammoth Recreations,</u>

7  <u>Inc.</u>, 975 F.2d 604, 607-08 (9th Cir. 1992). Under Rule 15(a)(2), the court should freely

8  give leave to amend a pleading "when justice so requires." The Court should apply this

9  policy "with extreme liberality." <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708,

10  712 (9th Cir. 2001) (quoting <u>Morongo Band of Mission Indians v. Rose</u>, 893 F. 2d 1074,

11  1079 (9th Cir. 1990)). "If the underlying facts or circumstances relied upon by a [party]

12  may be a proper subject of relief, he ought to be afforded an opportunity to test his claim

13  on the merits." <u>Forman v. Davis</u>, 371 U.S. 178, 182 (1962).

14      However, a district court may deny leave to amend where there is "any apparent

15  or declared reason" for doing so, including "undue delay, bad faith or dilatory motive on

16  the part of the movant, repeated failure to cure deficiencies by amendments previously

17  allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,

18  [or] futility of amendment." <u>Id.</u> These factors are not to be given equal weight. <u>Eminence</u>

19  <u>Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003). Prejudice to the

20  opposing party must be given the greatest weight. <u>Id.</u> "Absent prejudice, or a strong

21  showing of any of the remaining <u>Forman</u> factors, there exists a presumption under Rule

22  15(a) in favor of granting leave to amend." <u>Id.</u>

23  ## III.   PARTIES' ARGUMENTS

24      Plaintiff states that he wishes to amend his complaint to include acts of retaliation

25  by Defendants Garcia and Goss that Plaintiff learned of through discovery and that

26  occurred subsequent to the filing of the operative complaint in this action. He suggests

27  that the amendment will not result in undue delay or prejudice because he does not

28  propose to bring in new defendants, and because he already has advised Defendants of

1  these allegations in his opposition to their pending motion for summary judgment. (ECF
2  No. 87).

3        Defendants respond that Plaintiff has been dilatory in seeking to amend, was not
4  diligent in conducting discovery, that amendment would prejudice Defendants (who
5  already have deposed Plaintiff and filed a motion for summary judgment), and that
6  amendment would be futile because Plaintiff cannot establish the elements of a
7  retaliation claim. (ECF No. 93.)

8  **IV.    PLEADING HISTORY**

9        **A.    Procedural History**

10        Plaintiff initiated this action on March 25, 2012 with the filing of his initial
11  complaint. (ECF No. 1.) Before that complaint was screened, Plaintiff filed a first
12  amended complaint. (ECF No. 7.) That pleading appeared to be a list of exhibits and did
13  not include factual allegations or legal claims. (See ECF No. 15.) Accordingly, in
14  screening Plaintiff's first amended complaint, the Court provided Plaintiff with the legal
15  standards applicable to the claims Plaintiff appeared to allege in his original, superseded
16  complaint. (Id.)

17        Plaintiff was given leave to amend (id.), and filed a second amended complaint on
18  January 22, 2013 (ECF No. 17.) The second amended complaint is the operative
19  pleading in this action. Defendants answered on June 10, 2014. (ECF No. 33.) Discovery
20  opened on June 11, 2014. The deadline to amend pleadings was set for December 11,
21  2014. (Id.) Shortly before the expiration of that deadline, Plaintiff filed a motion for
22  extension of time to amend. (ECF No. 47.) The motion was granted (ECF No. 84), and
23  the instant motion followed (ECF No. 87).

24        **B.    Operative Complaint**

25        In the second amended complaint, Plaintiff complains of acts that occurred at
26  California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California.[1] He
27
28     [1] Plaintiff presently is incarcerated at Mule Creek State Prison.

names as Defendants the following CSATF staff: (1) Warden Ralph Diaz, (2) Warden Kathleen Allison, (3) Raymond Coffin, Chief of Mental Health, (4) Clinician Rocio Garcia, M.S.W., (5) Lillian Goss, L.P.T., (6) Clinician Victor Trevino, M.S.W., and (7) Abdul Isira, Phy.D.

He alleges that these Defendants violated his First, Eight, and Fourteenth Amendment rights, as well as the ADA and state laws. His allegations may be summarized essentially as follows:

Plaintiff suffers from depression, post-traumatic stress disorder, and anxiety. He attributes these disabilities to overcrowded prison conditions at Avenal State Prison (where he was housed immediately prior to CSATF) and other facilities where he was incarcerated over the course of nineteen years.

He arrived at CSATF on June 7, 2010 and was placed in the Enhanced Outpatient Program ("EOP") in the G-1 Facility. Plaintiff was housed in Facility G-1 from June 7, 2010 to January 19, 2011 and from March 24, 2011 to June 23, 2011. Facility G-1 was overcrowded, unsafe, and understaffed, and staff was untrained. Inmates assisted mental health staff with their daily duties and had improper access to Plaintiff's confidential health information and information regarding his commitment offenses. Defendants also did not properly attend to Plaintiff's mental health needs.

On January 19, 2011, Plaintiff was involved in an altercation with another inmate in relation to Plaintiff's commitment offenses. The incident resulted in the use of force against Plaintiff by correctional officers and Plaintiff's placement in Administrative Segregation. Plaintiff filed a staff complaint regarding the involved correctional officers.

Plaintiff was released from Administrative Segregation back to Facility G-1 on March 24, 2011. On March 25, 2011, he wrote a letter to Defendant Allison to complain about staff, advised her that he feared retaliation, and requested to remain in Facility G-1 A Cluster, where Defendants Garcia and Goss worked.

Beginning in April 2011, Plaintiff noticed that Defendants Garcia, Goss, and Trevino, and other mental health staff, began to treat him differently than they had prior

to the January 19, 2011 incident. He attributes the change to his staff complaint regarding that incident.

Also beginning in April 2011, Plaintiff observed Defendant Garcia spending a lot of time on the internet on her office computer. She ignored Plaintiff and other female staff. In May 2011, Plaintiff observed Garcia being friendly toward other inmates. In June 2011, Plaintiff confronted Garcia over her ignoring him and favoring other inmates. Garcia became angry and refused to talk to Plaintiff. Shortly thereafter, Plaintiff observed Garcia giving a notebook to another inmate. The next day that inmate told Plaintiff that Garcia was his "girl" and they were going to live together after he paroled. Plaintiff experienced a great deal of "anguish," anxiety and stress over the change in Garcia's demeanor toward him.

In May and June 2011, Plaintiff observed "misconduct" on the part of Defendants Garcia and Goss, and other mental health staff who were using their computers for non-work purposes. He also saw correctional officers flirting with mental health staff.

In June 2011, a mental health staff member told Plaintiff that Garcia did not like him due to his commitment offenses. Upon learning this, Plaintiff began to fear he was at risk for further harm. He decided to report the "misconduct" he had observed to prison staff. Accordingly, on June 14, 2011, he wrote a detailed letter to Defendant Allison regarding the misconduct and his fears of retaliation. Defendant Coffin responded to the letter, stating that retaliation would not be tolerated.

By June 16, 2011, Defendants Garcia, Goss, and Trevino began to retaliate against Plaintiff by writing fabricated reports, CDCR-128 chronos, and CDCR-115s in order to have him transferred out of Facility G-1. More specifically, on June 16, 2011, an interaction occurred between Plaintiff and Defendant Garcia. Plaintiff complimented Garcia's shoes in order to see her reaction. Garcia accused Plaintiff of overfamiliarity. Garcia apparently wrote a mental health report regarding the overfamiliarity and placed it in Plaintiff's file. On June 21, 2011, Defendant Trevino spoke with Plaintiff about the possibility of Plaintiff being moved out of Facility G-1. Trevino wrote a report of this

1  conversation that contained false information regarding Plaintiff's behavior. On June 22,
2  2011, Garcia addressed her concerns regarding overfamiliarity to a sergeant, who wrote
3  a CDCR-128 chrono regarding Plaintiff's "unusual behavior." On June 23, 2011
4  Defendants Goss and Garcia made false allegations that Plaintiff was stalking and
5  threatening them. Two CDCR-128 chronos were written regarding these allegations.
6  Plaintiff also received a CDCR-115 Rules Violation Report regarding threats to
7  Defendant Goss, but he was found not guilty. Plaintiff claims Defendant Coffin was
8  aware of this retaliation and failed to protect Plaintiff.

9  Based on these actions, on June 23, 2011, Plaintiff was transferred to non-EOP
10 housing in an overcrowded gym where his mental health condition could not be
11 effectively treated or accommodated. Upon being transferred, Plaintiff came under the
12 care of Defendant Isira.

13 Defendant Isira, in concert with the other Defendants, also retaliated against
14 Plaintiff by intentionally falsifying medical records, misdiagnosing Plaintiff as not suffering
15 from a substantiated mental health disorder, providing unacceptable mental health care,
16 and terminating Plaintiff's EOP level of care.

17 Four months later, Plaintiff was examined by a non-party mental health provider
18 who correctly diagnosed his mental health conditions and transferred Plaintiff back to the
19 EOP level of care.

20 **C.    The Court's Screening Order**

21 The Court screened Plaintiff's second amended complaint (ECF Nos. 26 and 28)
22 and concluded it stated no cognizable claims against Defendants Diaz or Allison.

23 However, the Court concluded that Plaintiff successfully pleaded a cognizable
24 retaliation claim against Defendants Garcia, Goss, Trevino, and Isira based on
25 allegations that they were aware of his staff complaints and grievances, and shortly
26 thereafter made false reports designed to remove him from the EOP unit and the EOP
27 level of care. The Court also found that Plaintiff pleaded a cognizable retaliation claim
28 against Defendant Coffin based on the allegation that Coffin was aware of retaliatory

conduct by his subordinates and failed to respond and prevent further retaliation, notwithstanding opportunity to do so.

Lastly, the Court concluded that Plaintiff pleaded cognizable medical indifference and state law negligence claims against Defendant Isira based on the allegation that Isira intentionally misdiagnosed Plaintiff and caused EOP level care and treatment to be terminated, and that Isira's actions were reversed several months later by another health care practitioner.

All other claims and defendants were dismissed with prejudice.

### D.    Proposed Third Amended Complaint

Plaintiff's proposed third amended complaint does not add any additional defendants. It is brought only against Defendants Coffin, Garcia, Goss, Trevino, and Isira.

Plaintiff's proposed amended complaint reiterates nearly verbatim the facts set forth above relevant to the retaliation, medical indifference, and negligence claims.[2] His additional factual allegations, while somewhat difficult to follow, may be summarized essentially as follows:

From June 23, 2011 to August 1, 2011 Defendants Trevino and Garcia relayed false information to Defendant Isira to enlist Isira's aid in retaliating against Plaintiff for filing a staff complaint.

On July 26, 2011 and November 4, 2011, Isira authored CDCR-128C chronos alleging hostile misbehavior by Plaintiff. These statements were pretextual and in retaliation for Plaintiff's complaints of staff misconduct. The second of these was written

---

[2]    Plaintiff also reiterates facts relevant to various claims that previously were dismissed with prejudice. Plaintiff was warned that leave to amend would not be grated for such claims. (ECF No. 84.) Thus, these claims are not addressed herein.

Plaintiff also previously was advised to limit his proposed amended complaint to no more than 25 pages, and was warned that an exceedingly and needlessly lengthy complaint would not be filed. Nevertheless, Plaintiff's proposed amended complaint totals 29 pages, and would be significantly longer if not written in miniscule handwriting. Plaintiff is warned that further gamesmanship to avoid compliance with the spirit of the Court's orders will not be tolerated and may subject Plaintiff to sanctions, to include monetary sanctions, sanctions striking all or part of his claims, or the like. See Thompson v. Housing Auth., 782 F.2d 829, 831 (9th Cir. 1986) (holding that in exercising its power to control its own docket, the Court may impose sanctions).

1    after Plaintiff filed 602 administrative complaints against Isira. Isira then altered these

2    chronos around December 4, 2012.

3         On November 15, 2011, Defendant Garcia authored a CDCR-128C chrono

4    containing false allegations regarding Plaintiff's overfamiliarity in June 2011. Plaintiff

5    previously had been found not guilty of these allegations. Plaintiff sent Garcia CDCR-22

6    form requests informing her that he had been found not guilty of the allegations. Garcia

7    then falsely claimed that Plaintiff had sent her three requests asking her to remove

8    documents from his file.

9         Plaintiff continued to file 602 administrative appeals regarding Defendants'

10   conduct in 2011, 2012, 2013, and 2014, resulting in further unspecified retaliation.

11        Plaintiff appeared before a classification committee in November 2012 and

12   February 2013. Therein, the decision was made to transfer Plaintiff to Mule Creek State

13   Prison's Level III EOP for treatment (CSATF has a Level II SNY EOP) due to Garcia's

14   false claims of safety issues with Plaintiff remaining at CSATF. Plaintiff was transferred

15   to Mule Creek on March 29, 2013.

16        On May 31, 2012, Defendants Isira, Goss, Garcia, and Trevino relayed false

17   information to A. Vickers, Psy. D., causing her to issue a false 128B chrono regarding

18   Plaintiff's efforts to gather information regarding Defendants in relation to this litigation.

19        Defendants were served in this action on April 1, 2014.

20        On April 29, 2014, Plaintiff transferred back to CSATF and Facility G-1. On April

21   30, 2014, Plaintiff saw Defendant Goss but they did not speak. Later that day, a

22   correctional officer asked Plaintiff whether he had litigation pending regarding anyone in

23   Facility G-1, to which Plaintiff responded that he had litigation pending regarding Goss

24   (apparently, the remaining Defendants no longer work in Facility G-1). Plaintiff informed

25   the officer that he had filed 602s regarding his fears of retaliation prior to the transfer.

26        On April 30, 2014, Goss wrote a CDCR-128 chrono detailing her history of CDCR-

27   115s and CDCR-128s regarding Plaintiff. In the April 30, 2014 CDCR-128, Goss falsely

28   stated that the June 22, 2011 CDCR-115 had been reduced to a counseling chrono.

1    On May 1, 2014, Goss and Garcia exchanged emails reflecting their meeting of

2    the minds to punish Plaintiff by reviving their earlier charges of misbehavior,

3    overfamiliarity, stalking, and threats.

4    The Court docket reflects that, at some point thereafter, Plaintiff again was

5    transferred to Mule Creek State Prison.

6    **V.      DISCUSSION**

7        **A.      Legal Standard – First Amendment Retaliation**

8    "Within the prison context, a viable claim of First Amendment retaliation entails

9    five basic elements: (1) An assertion that a state actor took some adverse action against

10   an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

11   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

12   reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559,

13   567-68 (9th Cir. 2005).

14   The second element of a prisoner retaliation claim focuses on causation and

15   motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show

16   that his protected conduct was a "'substantial' or 'motivating' factor behind the

17   defendant's conduct." Id. (quoting Sorrano's Gasco. Inc. v. Morgan, 874 F.2d 1310, 1314

18   (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the

19   defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283,

20   1288-89 (9th Cir. 2003) (finding that a prisoner establishes a triable issue of fact

21   regarding prison officials' retaliatory motives by raising issues of suspect timing,

22   evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt

23   v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as

24   circumstantial evidence of retaliatory intent").

25   The third prong can be satisfied by various activities. Filing a grievance is a

26   protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d

27   1135, 1138 (9th Cir. 1989). Pursuing a civil rights legal action is similarly protected under

28   the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

1    With respect to the fourth prong, "[it] would be unjust to allow a defendant to

2    escape liability for a First Amendment violation merely because an unusually determined

3    plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty.,

4    192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an

5    official's acts would chill or silence a person of ordinary firmness from future First

6    Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192

7    F.3d at 1300).

8    With respect to the fifth prong, a prisoner must affirmatively show that "the prison

9    authorities' retaliatory action did not advance legitimate goals of the correctional

10   institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at

11   532.

12   **B.    Analysis**

13   The Court concluded that the claims in Plaintiff's second amended complaint were

14   sufficient to state a cause of action because the statements by Defendants were alleged

15   to have led to the removal of Plaintiff from the EOP housing unit and the termination of

16   Plaintiff's participation in the EOP program. The removal of Plaintiff from EOP housing

17   and programming constituted an adverse action sufficient to chill a person of ordinary

18   firmness. Plaintiff now seeks leave to include additional allegations of retaliation by

19   Defendants.

20   The Court concludes that the following allegations are insufficient to allege

21   adverse action and therefore fail to state a claim: false chronos authored by Defendant

22   Isira in 2011; false chrono by Defendant Garcia in November 2011; and false statements

23   by Defendants Isira Trevino, Garcia and Goss to A. Vickers in May 2012. These

24   statements were made after the decision to terminate Plaintiff's EOP housing and EOP

25   level of care. They are not tied to any other adverse action. Plaintiff was not disciplined

26   in relation to any of these statements. Although Plaintiff disagrees with the statements,

27   they do not constitute adverse action in and of themselves. See, e.g., Jenkins v. Caplan,

28   No. C 02-5603 RMW PR, 2010 WL 3742659, at *2 (N.D. Cal. Sept. 16, 2010) (granting

1    summary judgment for defendant where plaintiff failed to present evidence that chrono

2    constituted adverse action); Williams v. Woodford, 2009 WL 3823916, *3 (E.D. Cal.

3    2009) ("the alleged filing of the false administrative chrono fails to state a claim because

4    it is not a sufficient adverse action for a retaliation claim because the chrono was merely

5    informational"); Samano v. Copeland, 2008 WL 2168884, *2 (E.D. Cal.2008) (dismissing

6    retaliation claim for failure to state a claim because issuing a counseling chrono did not

7    constitute an adverse action). Leave to amend to add these allegations would be futile

8    and should be denied.

9         Plaintiff's allegation that Defendant Isira altered chronos has been the subject of

10   several discovery disputes in this action. (See ECF Nos. 84, 104.) Plaintiff consistently

11   has failed to present a plausible factual basis for his belief that the chronos were altered.

12   This allegation appears to be based purely on speculation and therefore is insufficient to

13   state a claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (factual

14   allegations must be sufficient to raise a right to relief above the speculative level).

15   Pleading standards require Plaintiff to set forth "sufficient factual matter, accepted as

16   true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,

17   678 (2009) (citing Twombly, 550 U.S. at 555). Facial plausibility demands more than the

18   mere possibility that a defendant committed misconduct. Id. at 677-78. Additionally, even

19   if alterations could be substantiated, Plaintiff fails to explain how any changes constitute

20   an adverse action. Given Plaintiff's inability to substantiate this allegation through the

21   discovery process or link it to an adverse action, leave to amend to add this allegation

22   would be futile and should be denied.

23        Plaintiff appears to allege that a false chrono written by Defendant Goss in April

24   2014 was designed to force Plaintiff's removal from CSATF for a second time. Plaintiff

25   was, in fact, removed from CSATF to Mule Creek State Prison at some point following

26   the April 2014 chrono. However, Plaintiff's transfer to Mule Creek in 2014 cannot be

27   construed as adverse action. Documents before the Court (ECF Nos. 93-1 at 94-96)

28   reflect that Plaintiff objected to being transferred back to CSATF, and Plaintiff therein

1    suggested that he should have been transferred to Mule Creek in the first instance.
2    Given Plaintiff's apparent desire to be housed at Mule Creek over CSATF, his transfer
3    from CSATF to Mule Creek does not constitute an adverse action that would chill a
4    person of ordinary firmness. Leave to amend to add this claim would be futile and should
5    be denied.

6        Plaintiff claims that emails between Goss and Garcia in 2014 reflect their intent to
7    revive their earlier false statements regarding Plaintiff's behavior. The Court finds no
8    such intent in the emails as described by Plaintiff. The discussion between Goss and
9    Garcia, while perhaps unprofessional, does not reflect a meeting of the minds to deprive
10   Plaintiff of his constitutional rights. It merely contains ongoing discussion regarding the
11   instant litigation and chronos that already had been authored by the defendants. More
12   importantly, Plaintiff does not suggest how such discussion constitutes an adverse
13   action. Leave to amend to add this claim will be futile and should be denied.

14       This leaves only Plaintiff's allegation that Defendants Trevino and Garcia made
15   false statements to Defendant Isira from June 23, 2011 to August 1, 2011 in order to
16   enlist Isira's aid in terminating Plaintiff's EOP level of care in retaliation for his filing a
17   staff complaint against Facility G-1 correctional officers involved in a use of force incident
18   against Plaintiff. The nature of the false statements is not precisely described, although it
19   appears to involve merely alerting Isira to Defendants' allegedly false chronos. Put
20   another way, this appears to be a new iteration of the claims already presented in
21   Plaintiff's second amended complaint. In this circumstance, disallowing the amendment
22   does not prevent Plaintiff from testing his retaliation claim on the merits. Accordingly, the
23   Court will recommend that leave to amend be denied.

24   **VI.    CONCLUSION**

25       Based on the foregoing, the Court concludes that leave to amend would be futile.
26   Accordingly, the Court HEREBY RECOMMENDS that Plaintiff's motions for leave to file
27   an amended complaint (ECF No. 87) be denied.

28       The findings and recommendation will be submitted to the United States District

1    Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).

2    Within fourteen (14) days after being served with the findings and recommendation, the

3    parties may file written objections with the Court. The document should be captioned

4    "Objections to Magistrate Judge's Findings and Recommendation." A party may respond

5    to another party's objections by filing a response within fourteen (14) days after being

6    served with a copy of that party's objections. The parties are advised that failure to file

7    objections within the specified time may result in the waiver of rights on appeal.

8    Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923

9    F.2d 1391, 1394 (9th Cir. 1991)).

10

11   IT IS SO ORDERED.

12       Dated:   January 27, 2016          /s/ Michael J. Seng

13                                          UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13